1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GRANT S. PARKISON, JR.,

11            Plaintiff,              No. 2:09-cv-2257 MCE DAD P

12       vs.

13   BUTTE COUNTY SHERIFF'S
     DEPT., et al.,                   ORDER AND
14
              Defendants.            FINDINGS AND RECOMMENDATIONS
15   _____/

16          Plaintiff is state prisoner and former Butte County Jail inmate proceeding through

17   counsel with a civil rights action seeking relief under 42 U.S.C. § 1983.  This matter is before the

18   court on a motion for summary judgment brought on behalf of defendants Butte County Sheriff's

19   Department, Correctional Officer Marten, and Captain Jones pursuant to Rule 56 of the Federal

20   Rules of Civil Procedure.  Counsel for plaintiff has filed an opposition to the motion, and counsel

21   for defendants has filed a reply.  Counsel for plaintiff has also filed a motion to supplement

22   plaintiff's opposition, which the court will also address below.

23          The court heard the oral arguments of counsel in this case on May 25, 2012, and

24   took the matter under submission at that time.  For the reasons stated herein and already on the

25   record, the court issues the following orders and findings and recommendations.

26   /////

1

**BACKGROUND**

Plaintiff is proceeding on his original complaint against defendants Butte County Sheriff's Department, Correctional Officer Marten, and Captain Jones (hereinafter the "county defendants").[1]  In relevant part, plaintiff alleges in his complaint as follows.  On June 7, 2008, plaintiff was incarcerated at the Butte County Jail ("BCJ").  During a lock-down incident, he was face down on the floor when defendant Correctional Officer Marten shot him in the back of the head at point blank range with a gun loaded with pepper balls.  (Compl. at 3.)

Prior to his arrest and incarceration at BCJ, plaintiff underwent two consecutive surgical procedures in 2006 to control epileptic seizures.  Doctors removed a portion of plaintiff's brain matter that contained a tumor.  As a result of the surgery, plaintiff is half blind and suffers from severe short-term memory loss, which affects his ability to retain information and, thus, follow directions.  According to the complaint, plaintiff needs semi-annual MRI's to monitor his post-surgical status, his anti-seizure medication Tegretol, and blood tests to monitor his intake and levels of Tegretol.  Plaintiff alleges that he did not receive any such monitoring for the sixteen months he was incarcerated at BCJ.  (Compl. at 3 & 6.)

Plaintiff claims that defendant Marten violated plaintiff's rights under the Eighth Amendment and various state laws because he used excessive force against plaintiff during the lock-down incident.  In addition, plaintiff claims that the county defendants failed to provide him with adequate medical care.  Plaintiff also claims that the Butte County Sheriff's Department and defendant Captain Jones maintained policies at BCJ that allowed defendant Marten and other staff to subject inmates to cruel and unusual punishment.  Finally, plaintiff claims that the county defendants violated his rights under a contract between Butte County and California Forensic Medical Group and as well as his rights under a 1995 consent decree.  Both the contract and the

---

[1]  Plaintiff has also sued California Forensic Medical Group ("CFMG").  CFMG is represented by the law firm of Trimble Sherinian and Varanini.  Counsel on behalf of defendant CFMG has also filed a motion for summary judgment, which the court will address in separate findings and recommendations.

1  consent decree referred to govern the provision of medical care to inmates at BCJ.  In terms of

2  relief, plaintiff requests monetary damages.  (Compl. at 4-10.)

3                            **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

4          Summary judgment is appropriate when it is demonstrated that there exists "no

5  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

6  matter of law."  Fed. R. Civ. P. 56(c).

7
8
9
10

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

11  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

12  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

13  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

14  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

15  after adequate time for discovery and upon motion, against a party who fails to make a showing

16  sufficient to establish the existence of an element essential to that party's case, and on which that

17  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

18  concerning an essential element of the nonmoving party's case necessarily renders all other facts

19  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

20  whatever is before the district court demonstrates that the standard for entry of summary

21  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

22          If the moving party meets its initial responsibility, the burden then shifts to the

23  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

24  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

25  establish the existence of this factual dispute, the opposing party may not rely upon the

26  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

1  form of affidavits, and/or admissible discovery material, in support of its contention that the

2  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

3  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

4  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

5  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

6  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

7  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

8  1436 (9th Cir. 1987).

9           In the endeavor to establish the existence of a factual dispute, the opposing party

10  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

11  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

12  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

13  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

14  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

15  committee's note on 1963 amendments).

16          In resolving the summary judgment motion, the court examines the pleadings,

17  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

18  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

19  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

20  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

21  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

22  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

23  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

24  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

25  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

26  /////

1   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

2   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

### OTHER APPLICABLE LEGAL STANDARDS

4   I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

5           The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

9   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

10  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

11  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

12  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

13  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

14  omits to perform an act which he is legally required to do that causes the deprivation of which

15  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

16          Moreover, supervisory personnel are generally not liable under § 1983 for the

17  actions of their employees under a theory of respondeat superior and, therefore, when a named

18  defendant holds a supervisorial position, the causal link between him and the claimed

19  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

20  (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

21  allegations concerning the involvement of official personnel in civil rights violations are not

22  sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

23  II.  The Fourteenth Amendment and Excessive Use of Force

24          "The Due Process [C]lause protects pretrial detainees from the use of excessive

25  force that amounts to punishment."  See Gibson v. County of Washoe, 290 F.3d 1175, 1197 (9th

26  Cir. 2002).  In analyzing Fourteenth Amendment claims for excessive force, the Ninth Circuit

1   has adopted the Fourth Amendment objective reasonableness standard.  See id.; see also Graham

2   v. Connor, 490 U.S. 386, 395 (1989).  Under this standard, "'[t]he force which [i]s applied must

3   be balanced against the need for that force:  it is the need for force which is at the heart of the

4   Graham factors.'"  Liston v. County of Riverside, 120 F.3d 965, 976 (9th Cir. 1997) (quoting

5   Alexander  v. City and County of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994)).  See also

6   Bryan v. MacPherson, 630 F.3d 805, 823 (9th Cir. 2010).

7           In analyzing the nature and quality of the intrusion on an individual's Fourth

8   Amendment interests, the court must consider both the type and the amount of force used.  The

9   court must also "examine the totality of the circumstances and consider 'whatever specific

10   factors may be appropriate in a particular case, whether or not listed in Graham.'"  Bryan, 630

11   F.3d at 824 & 826.  For example, the court may appropriately consider whether a warning was

12   given before force was used.  See Deorle v. Rutherford, 272 F.3d 1272, 1285 (9th Cir. 2001)

13   ("Less than deadly force that may lead to serious injury may be used only when a strong

14   governmental interest warrants its use, and in such circumstances should be preceded by a

15   warning, when feasible.").  "Force is excessive when it is greater than is reasonable under the

16   circumstances."  Santos v. Gates, 287 F.3d 846, 854 (9th Cir. 2002) (citing Graham, 490 U.S.

17   386).

18   III.  The Fourteenth Amendment and Inadequate Medical Care

19           "[T]he 'deliberate indifference' standard applies to claims that correction facility

20   officials failed to address the medical needs of pretrial detainees."  Clouthier v. County of Contra

21   Costa, 591 F.3d 1232, 1242 (9th Cir. 2010).  See also Simmons v. Navajo County, 609 F.3d

22   1011, 1017 (9th Cir. 2010) ("Although the Fourteenth Amendment's Due Process Clause, rather

23   than the Eighth Amendment's protection against cruel and unusual punishment, applies to

24   pretrial detainees, we apply the same standards in both cases.") (internal citations omitted).

25           Deliberate indifference is "a state of mind more blameworthy than negligence"

26   and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"

1   <u>Farmer</u>, 511 U.S. at 835.  Under the deliberate indifference standard, a person may be found

2   liable for denying adequate medical care if he "knows of and disregards an excessive risk to

3   inmate health and safety." <u>Id.</u> at 837.  <u>See also Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Lolli</u>

4   <u>v. County of Orange</u>, 351 F.3d 410, 418-19 (9th Cir. 2003); <u>Doty v. County of Lassen</u>, 37 F.3d

5   540, 546 (9th Cir. 1994).  A deliberate indifference claim predicated upon the failure to provide

6   medical treatment has two elements:

7   > First, the plaintiff must show a "serious medical need" by
8   > demonstrating that "failure to treat a prisoner's condition could
    > result in further significant injury or the 'unnecessary and wanton
    > infliction of pain.'" Second, the plaintiff must show the
9   > defendant's response to the need was deliberately indifferent.

10  <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006).  <u>See also McGuckin v. Smith</u>, 974 F.2d

11  1050, 1059 (9th Cir. 1991) (an Eighth Amendment medical claim has two elements: "the

12  seriousness of the prisoner's medical need and the nature of the defendant's response to that

13  need."), <u>overruled on other grounds by WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133 (9th Cir.

14  1997) (en banc).

15  IV.  <u>State Law</u>

16      A.  <u>Battery</u>

17      Under California law, battery is defined as the "willful and unlawful use of force

18  or violence upon the person of another."  Cal. Penal Code § 242.  To succeed on a civil claim for

19  battery, plaintiff must demonstrate that the "(1) defendant intentionally performed an act that

20  resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent

21  to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to

22  plaintiff." <u>Brown v. Ransweiler</u>, 171 Cal. App. 4th 516, 526-27 (2009).  To prevail on a battery

23  claim against a police officer, plaintiff must show that the defendant officer used excessive force.

24  <u>Edson v. City of Anaheim</u>, 63 Cal. App. 4th 1269, 1273 (1998).  A court should analyze whether

25  an officer used excessive force under the Fourth Amendment reasonableness standard.  <u>Munoz v.</u>

26  <u>City of Union City</u>, 120 Cal. App. 4th 1077, 1102 (2004).

B.  <u>The Bane Civil Rights Act</u>

California's Bane Civil Rights Act provides:

(a) If a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured . . . .

(b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured.

Cal. Civ. Code § 52.1(a) & (b).

There are four elements to a claim brought under the Bane Act: (1) the defendant interfered with or attempted to interfere with plaintiff's constitutional or statutory right; (2) the plaintiff reasonably believed that if he exercised his constitutional right the defendant would commit violence against him, or the defendant injured plaintiff to prevent him from exercising his constitutional right; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm.  <u>See</u> <u>Austin B. v. Escondido Union Sch. Dist.</u>, 149 Cal. App. 4th 860, 883 (2007) ("The word 'interferes' as used in the Bane Act means 'violates.'"); <u>see also</u> <u>Stamps v. Superior Court</u>, 136 Cal. App. 4th 1441, 1448 (2006) (the Bane Civil Rights Act is intended to supplement Ralph Civil Rights Act and to allow an individual to seek relief to prevent violence before it occurs).

/////

/////

8

C.  Intentional Infliction of Emotional Distress

"In order to establish a claim for intentional infliction of emotional distress under California law, [a plaintiff] is required show (1) that the defendant's conduct was outrageous, (2) that the defendant intended to cause or recklessly disregarded the probability of causing emotional distress, and (3) that the plaintiff's severe emotional suffering was (4) actually and proximately caused by defendant's conduct."  Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004).  "Only conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress is actionable."  Brooks v. United States, 29 F. Supp. 2d 613, 618 (N.D. Cal. 1998) (internal quotation marks omitted)

**COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.  Defendants' Statement of Undisputed Facts and Evidence

Defendants' statement of undisputed facts is supported by citations to declarations signed under penalty of perjury by defendant Marten and Lieutenant Bryan Flicker.  It is also supported by references to copies of the BCJ policy governing use of the PepperBall System, the contract between Butte County and CFMG in effect from July 1, 2008, through June 30, 2011, and the Butte County Consent Decree.

The evidence submitted by the county defendants establishes the following.  On June 7, 2008, inmates located in the B Pod of BCJ created a significant disturbance protesting the cancellation of Saturday visitation.  Plaintiff, as well as seven or eight other inmates, were regarded by jail officials as presenting severe problems and criminally sophisticated.  They were organized and communicated their intent to cause disruption at the facility.  They covered the windows of their cells and barricaded their cell doors.  They also broke fire suppression sprinkler heads with the intent of flooding the pod.  (Defs.' SUDF 6-7, Marten Decl.)

Jail officials determined that cell extractions were necessary.  Jail staff assembled with K-9 units and protective gear.  As they extracted inmates from their cells, officers placed waist and ankle chains on those inmates and told them to lie down in the hallway as their cells

1  were cleared and sprinkler heads repaired.  Plaintiff was the fifth inmate removed from his cell.

2  There were a total of six inmates placed in the hallway on the floor in waist and leg restraints.

3  (Defs.' SUDF 8 & 12, Marten Decl.)

4          Sergeant Young ordered defendant Marten to maintain order in the hallway and

5  authorized him to use the PepperBall System if necessary.  The PepperBall System is a non-lethal

6  device used to deliver a projectile containing powdered Oleoresin Capsicum pepper.  Defendant

7  Marten has been trained and certified to deploy the PepperBall System.  The system is authorized

8  for use by trained and certified BCJ personnel whenever the use of a less than lethal weapon

9  would facilitate entry, enable arrest, and potentially reduce the risk of injury to staff and inmates.

10  (Defs.' SUDF 3-5 & 11, Marten Decl. & Am. Flicker Decl. & Ex. A.)

11          During the cell extraction, plaintiff was cursing and swearing at staff, thrashing

12  around, arching his back to lift his head and rocking from side to side.  Defendant Marten told

13  plaintiff to be quiet several times.  Defendant Marten determined that plaintiff's conduct was

14  inciting other inmates and escalating tension.  Although plaintiff was in restraints, defendant

15  Marten was concerned about his behavior because plaintiff is known as a criminally sophisticated

16  inmate who is able to slip free from restraints.  (Defs.' SUDF 12-15, Marten Decl.)

17          Defendant Marten warned plaintiff that if he did not quiet down he would use the

18  PepperBall System to subdue him.  After plaintiff refused to follow instructions defendant

19  Marten aimed the PepperBall System at the floor in the vicinity of plaintiff.  When defendant

20  Marten discharged the PepperBall System plaintiff suddenly jerked and rolled lifting his head six

21  to ten inches where the defendant had deployed the pepper ball.  The pepper ball grazed the left

22  side of plaintiff's head and behind and below his ear and dispersed the Oleoresin Capsicum

23  pepper.  Defendant Marten did not intend to hit plaintiff.  In response to the pepper ball shot,

24  plaintiff stated "this powder sucks."  Plaintiff was then checked and photographed in the jail

25  medical unit and returned to the floor.  He did not require, nor did he request, additional medical

26  treatment.  (Defs.' SUDF 18-25, Marten Decl.)

1          Plaintiff filed several inmate grievances while incarcerated at BCJ.  However,

2   plaintiff did not file any grievance regarding BCJ's failure to provide him with adequate medical

3   care after this lock-down incident.  In fact, plaintiff did not file any grievance regarding any

4   medical issue during his incarceration at the jail.  (Defs.' SUDF 27-28, Am. Flicker Decl.)

5          Butte County contracts with CFMG to provide all medical, psychological, and

6   dental services to inmates.  BCJ staff does not diagnose inmates, and they do not provide inmates

7   with medical treatment or medication.  The contract between Butte County and CFMG states:

8              The parties agree that they have not entered into this Agreement for
               the benefit of any third person or persons, and it is their express
9              intention that the Agreement is intended to be for their respective
               benefit only and not for the benefit of others who might otherwise
10             be deemed to constitute third-party beneficiaries hereof.

11   (Defs.' SUDF 29-30, Am. Flicker Decl. & Ex. B.)

12          The consent decree at issue here was entered in the action entitled <u>Jones, et. al. v.</u>

13   <u>Brooks, et al.</u>, Case No. 084429 (Butte County Superior Court) and deals with, <u>inter</u> <u>alia</u>, inmate

14   medical care, mental health care, and dental care.  The decree authorizes a coordinator to review

15   the actual operational procedures in effect.  The decree also authorizes the coordinator to meet

16   with all counsel.  The consent decree expressly establishes the continuing jurisdiction for

17   enforcement of the decree with the Butte County Superior Court.  It states:

18             The Enforcement of this DECREE may be sought by any party or
               by the Coordinator.  If sought by the Coordinator, it shall be by
19             written recommendation to the Court.  If sought by the parties, it
               shall be duly noticed motion or Order To Show Cause.  In either
20             event, enforcement issues will be heard and decided by the
               Superior Court, County of Butte.
21

22   (Defs.' SUDF 31-33, Am. Flicker Decl. & Ex. C.)

23   II.  <u>Defendants' Arguments</u>

24          In moving for summary judgment in their favor the county defendants argue that:

25   (1) defendant Marten did not violate plaintiff's rights under the Eighth Amendment because he

26   used only the force necessary to maintain and restore discipline; (2) defendant Marten's use of

force was reasonable, so plaintiff's state law claims for assault and battery have no merit; (3)

plaintiff's claims under the Bane Act fail because there was no constitutional or statutory

violation as a result of defendant Marten's deployment of the pepper ball; (4) plaintiff's

intentional infliction of emotional distress claim fails because defendant Marten's conduct was

neither outrageous nor intended to cause or recklessly disregard the probability of causing

emotional distress; (5) plaintiff failed to exhaust his administrative remedies with respect to his

claims of inadequate medical care; (6) plaintiff's claims against the Butte County Sheriff's

Department and defendant Captain Jones are barred pursuant to Monell; (7) plaintiff's breach of

contract claim fails because he is not a proper third-party beneficiary of any contract; and (8)

plaintiff's claim that Butte County violated the consent decree in effect with respect to the BCJ

should be dismissed because the Butte County Superior Court has jurisdiction to enforce that

decree.  (Defs.' Mem. of P. & A. at 4-15.)

III.   Plaintiff's Opposition

         In opposition to the county defendants' motion for summary judgment, counsel

for plaintiff argues that:  (1) there are genuine issues of material fact with respect to plaintiff's

excessive use of force claim, including the extent of injury he suffered, the need for the

application of force, the relationship between the need for force and the amount of force used, the

threat perceived by defendant Marten, and efforts made to temper the severity of a forceful

response; (2) there are genuine issues of material fact with respect to plaintiff's assault and

battery claims because an officer may use reasonable force to overcome resistance but not to

punish or torture an inmate as defendant Marten did in this case; (3) plaintiff's claims under the

Bane Act survive summary judgment because plaintiff has established an Eighth Amendment

claim; (4) defendant Marten's conduct was malicious and sadistic and supports a claim for

intentional infliction of emotional distress because he knew of plaintiff's ongoing criminal trial,

his seizure history, and the extent of his prior brain surgery; (5) as to plaintiff's inadequate

medical care claims counsel clarifies that plaintiff is only asserting these claims against

1  defendant CFMG; (6) <u>Monell</u> does not provide a defense for the Sheriff's Department and

2  defendant Jones because plaintiff can prove that defendant Marten committed constitutional

3  violations pursuant to a longstanding practice or custom; (7) Butte County and CFMG cannot

4  permissibly contract to create a system of medical care that prohibits recipients of that care from

5  enforcing rights pursuant to it; and (8) "the consent decree describes the class as inmates at the

6  jail, so it should not apply to or bar individuals such as plaintiff who are no longer inmates in the

7  Butte County Jail."  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 5-10.)

8  IV.  <u>Defendants' Reply</u>

9          In reply, defense counsel reiterates that the undisputed evidence shows that

10  defendant Marten did not use force maliciously or sadistically to cause harm in violation of the

11  Eighth Amendment or state law.  In addition, counsel contends that the court should dismiss any

12  claims for inadequate medical care against the county defendants because plaintiff concedes that

13  he is only asserting those claims against CFMG.  Defense counsel also reiterates that plaintiff's

14  claims against the Sheriff's Department and Captain Jones are barred pursuant to <u>Monell</u>;

15  plaintiff has not produced any admissible evidence to show that his alleged constitutional

16  violations were the result of a municipal policy.  Finally, defense counsel repeats that plaintiff is

17  not a third-party beneficiary to the contract between Butte County and CFMG, and plaintiff must

18  seek any enforcement of the consent decree in the Butte County Superior Court.  (Defs.' Reply at

19  2-6.)

20                                          **ANALYSIS**

21  I.  <u>Plaintiff's Excessive Use of Force Claim against Defendant Marten</u>

22          Before addressing the merits of the pending summary judgment motion with

23  respect to plaintiff's excessive use of force claim against defendant Marten, the court will first

24  address the applicable legal standard governing that claim.  Both parties in this case assert Eighth

25  Amendment arguments in support of their respective positions.  However, plaintiff was not a

26  convicted state prisoner at the time of defendant Marten's alleged use of excessive force against

1  him.  Rather, plaintiff was awaiting trial and therefore was a pretrial detainee.  As noted above,

2  as a pretrial detainee, plaintiff was entitled to protection under the Fourteenth Amendment Due

3  Process Clause and not the Eighth Amendment Cruel and Unusual Punishment Clause.  See

4  Gibson, 290 F.3d at 1197.

5  Turning now to the merits of plaintiff's excessive use of force claim, if the

6  evidence submitted by defendant Marten in support of the pending motion for summary

7  judgment were undisputed, he would be entitled to summary judgment in his favor on plaintiff's

8  excessive use of force claim against him.  However, such is not the case.  Plaintiff has submitted

9  a declaration signed under penalty of perjury describing a very different set of facts than that

10  described by defendants' evidence.  According to plaintiff, he was not involved in any plan to

11  cause disruption at BCJ.  He did not cover the windows of his cell or barricade his cell door.  He

12  did not tamper with the fire sprinklers in his cell and did not attempt to slip from his restraints.

13  In addition, plaintiff was not worked up or rocking from side to side at the time of defendant

14  Marten's alleged excessive force.  In fact, plaintiff did not attempt to do anything other than lie

15  on the floor face down while chained.  Nevertheless, defendant Marten shot him in the head at

16  close range with a pepper ball.  Plaintiff never heard defendant Marten tell him to be quiet or

17  warn him that he was going to use the PepperBall System.  (Pl.'s Decl. at 4-5.)

18  On defendants' motion for summary judgment, the court is required to believe

19  plaintiff's evidence and draw all reasonable inferences from the facts before the court in

20  plaintiff's favor.  The court may not weigh the parties' evidence or determine the truth of the

21  matters asserted by the parties; rather the court is required only to determine whether there is a

22  genuine issue of material fact appropriately resolved by trial.  See Summers v. A. Teichert &

23  Son. Inc., 127 F.3d at 1152.  Here, drawing all reasonable inferences in plaintiff's favor, the court

24  /////

25  /////

26  /////

/////

finds that plaintiff has submitted sufficient evidence to create a genuine issue of material fact

with respect to his excessive use of force claim against defendant Marten.[2]

Accordingly, defendants' motion for summary judgment on plaintiff's excessive

use of force claim against defendant Marten should be denied.

II. Plaintiff's State Law Claims against Defendant Marten

Plaintiff's state law claims against defendant Marten for assault and battery,

violation of the Bane Act, and intentional infliction of emotional distress are premised on the

same allegations as his excessive use of force claim.  Whether defendant Marten used excessive

force against plaintiff remains a disputed factual issue.  For the same reason discussed above, the

court finds that plaintiff has submitted sufficient evidence to create a genuine issue of material on

his state law claims as well.  See Knapps v. City of Oakland, 647 F. Supp. 2d 1129, 1168 (N.D.

Cal. 2009) ("The elements of a section 52.1 excessive force claim are essentially identical to

those of a § 1983 excessive force claim."); Nelson v. Butte County Sheriff's Dep't, No. 2:09-cv-

2776 JAM EFB, 2012 WL 812385 at *12 (E.D. Cal. Mar. 9, 2012) (genuine issues of material

fact in dispute with respect to intentional infliction of emotional distress claim that is based on

same facts as excessive use of force claim); Bates v. Arata, No. C 05-3383 SI, 2008 WL 820578

at *26-27 (N.D. Cal. Mar. 26, 2008) ("The only Bane Act claims that survive summary judgment

are the excessive force claims . . . ."); see also Brown v. Ransweiler, 171 Cal. App. 4th 527

---

[2]  The Ninth Circuit has repeatedly cautioned lower courts to take care in deciding cases involving excessive use of force claims at the summary judgment stage.  In this regard, that court has explained:

> Because [the excessive use of force inquiry] nearly always requires
> a jury to sift through disputed factual contentions, and to draw
> inferences therefrom, we have held on many occasions that
> summary judgment or judgment as a matter of law in excessive
> force cases should be granted sparingly.

Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002).  See also Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005); Lolli v. County of Orange, 351 F.3d 410, 415-16 (9th Cir. 2003).  This case is no different.

1  (2009) ("A state law battery claim is a counterpart to a federal claim of excessive use of force.").

2        Accordingly, defendants' motion for summary judgment on plaintiff's state law

3  claims against defendant Marten should be denied as well.

4  III.  Plaintiff's Medical Care Claims against the County Defendants

5        Counsel for plaintiff has clarified in plaintiff's opposition to the pending motion

6  for summary judgment that plaintiff is not asserting any claims against the county defendants for

7  being deliberately indifferent to plaintiff's medical needs.  As such, there is no need for the court

8  to decide whether plaintiff exhausted his administrative remedies with respect to these claims.

9        Accordingly, the county defendants' motion for summary judgment on plaintiff's

10 deliberate indifference claims should granted.  Insofar as plaintiff's complaint can be construed

11 to assert deliberate indifference claims against the county defendants those claims should be

12 dismissed.

13 IV.  Plaintiff's Claims against the Butte County Sheriff's Department and Captain Jones

14       Municipalities are "persons" for purposes of § 1983 and can be held liable for

15 injuries imposed if the injuries were pursuant to a government "policy or custom."  Monell, 436

16 U.S. at 694.  However, municipalities cannot be held liable under a theory of respondeat

17 superior; there must be a causal link between the municipal policy and the constitutional tort.

18 See id. at 691; Bd. of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 405 (1997)

19 ("The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was

20 the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal

21 action was taken with the requisite degree of culpability and must demonstrate a direct causal

22 link between the municipal action and the deprivation of federal rights.")

23       In analyzing the limitations of municipal liability, the Supreme Court has stated:

24       Proof of a single incident of unconstitutional activity is not
         sufficient to impose liability under Monell, unless proof of the
25       incident includes proof that it was caused by an existing,
         unconstitutional municipal policy, which policy can be attributed
26       to a municipal policymaker.  Otherwise the existence of the

unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation.

City of Oklahoma v. Tuttle, 417 U.S. 808 (1985).

In this case, the parties do not dispute that the Butte County Sheriff's Department has issued a policy regarding the PepperBall System. That policy states:

Inmates who display violent or threatening behavior that may or does result in physical harm to others or themselves, or in the destruction of property, may require the deployment of the PepperBall System by correctional staff. The PepperBall System will not be deployed for punishment or discipline.

Use of this device for other than its intended use, or by an unauthorized person is prohibited. Unauthorized use may result in criminal and/or disciplinary action.

(Am. Flicker Decl. Ex. A.)

The court finds that the county defendants have borne the initial burden of demonstrating that there is no genuine issue of material fact with respect to the Sheriff's Department and defendant Jones' involvement in any alleged deprivation of plaintiff's constitutional rights. In particular, neither party disputes that the PepperBall System policy at BCJ is constitutional. In addition, neither party disputes that the plaintiff complains of only a single incident of defendant Marten allegedly violating the PepperBall System policy. See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.")

Given the evidence submitted by the county defendants, the burden shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to his claims of municipal liability. As noted above, on defendants' motion for summary judgment, the court is

1   required to believe plaintiff's evidence and draw all reasonable inferences from the facts before

2   the court in plaintiff's favor.  Drawing all reasonable inferences in plaintiff's favor, the court

3   concludes that plaintiff has not submitted sufficient evidence in this action to create a genuine

4   issue of material fact with respect to his claims against the Sheriff's Department and defendant

5   Jones.

6           Specifically, plaintiff has not submitted any evidence to show the Sheriff's

7   Department or defendant Jones maintained a "policy or custom" of allowing defendant Marten or

8   other officers to abuse the PepperBall System.  For example, plaintiff has not submitted evidence

9   of any other incidents of defendant Marten improperly deploying the PepperBall System.  Nor

10  has plaintiff come forward at the summary judgment stage of this litigation with any evidence of

11  incidents of other officers improperly deploying the PepperBall System at BCJ.  Instead,

12  plaintiff's counsel merely refers the court to two other civil rights actions filed by plaintiff's

13  counsel against Butte County in which inmates have submitted declarations complaining of

14  excessive force (unrelated to the PepperBall System).[3]  Plaintiff contends in conclusory fashion

15  that these other actions and the declarations submitted therein demonstrate that Butte County has

16  a policy of condoning excessive force at the jail and show that the Sheriff's Department and

17  defendant Jones had notice that excessive force was a widespread problem at BCJ.

18          Without more, plaintiff's "evidence" fails to raise a genuine issue of material fact

19  as to whether the Sheriff's Department or defendant Jones had a "policy or custom" of allowing

20  defendant Marten or other officers to abuse the PepperBall System or more broadly use excessive

21  force against county jail inmates.  See Trevino, 99 F.3d at 920 (evidence must establish "a

22

23          [3] Counsel for plaintiff is advised that references to declarations filed in other cases is not
    a proper way to submit evidence to this court.  See E.D. Cal. Local Rule 260 ("The opposing
24  party [on a motion for summary judgment] shall be responsible for the filing of all evidentiary
    documents cited in the opposing papers"); see also Carmen v. San Francisco Unified Sch. Dist.,
25  237 F.3d 1026, 1030 (9th Cir. 2001) ("The district court may limit its review to the documents
    submitted for the purposes of summary judgment and those parts of the record specifically
26  referenced therein.").

'longstanding practice or custom which constitutes the standard operating procedure of the local government entity."); see also Hunter v. County of Sacramento, 652 F.3d 1225, 1233 (9th Cir. 2011); Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 964 (9th Cir. 2008).  As an initial matter, plaintiff cites to other cases that do not involve the use of PepperBall System by law enforcement.  Because the cases do not involve the type of excessive force at issue here, the cases relied upon by plaintiff could not have put the Butte County Sheriff's Department or defendant Jones on notice of any widespread problem or a deficiency in training so as to prevent the alleged violation plaintiff's constitutional rights in this case.  See Connick v. Thomson, __ U.S. __, __, 131 S. Ct. 1350,1360 (2011) (prior Brady violations by attorneys in a District Attorney's Office were not sufficient to put the District Attorney on notice of need for further training because those prior Brady violations were not similar to the Brady violation at issue in the case before the court); Trevino, 99 F.3d at 920 ("When one must resort to inference, conjecture and speculation to explain events, the challenged practice is not of sufficient duration, frequency and consistency to constitute an actionable policy or custom.").

Moreover, even if the prior cases plaintiff relies upon were sufficiently similar to the this case, those prior cases are of no help to plaintiff in establishing a "policy or custom" in any event.  Specifically, in the first case plaintiff cites, Nelson v. County of Butte, 2:09-cv-2776 JAM EFB P, plaintiffs' excessive force and Monell claims have survived summary judgment, but neither this court nor a jury has yet to determine the credibility of the parties' evidence in that still pending case which is awaiting trial.  See Davis v. Clearlake Police Dep't, No. C-07-03365 EDL, 2008 WL 4104344 at *8 (N.D. Cal. Sept. 3, 2008) (the filing of five federal lawsuits alleging racial discrimination against a city is not evidence of a municipal policy or practice of racial discrimination).  In the second prior case plaintiff relies upon, Matthews v. County of Butte, 2:06-cv-0286 GEB JFM, this court granted summary judgment in favor of the county defendants on the plaintiff's excessive use of force claims and, because there was no constitutional violation, the court was not called upon to rule on any Monell claims.  The Ninth

1   Circuit recently affirmed the district court's judgment in <u>Matthews</u>.  This latter case, therefore,

2   actually supports the county defendants' position that there is no "policy or custom" endorsing

3   the use of excessive force at BCJ.

4           Finally, even if the two prior cases in which use of excessive force by Butte

5   County law enforcement has been alleged which plaintiff relies upon here could somehow raise a

6   genuine issue of material fact on the question of whether the defendants had a "policy or custom"

7   of allowing excessive force at BCJ, plaintiff has not submitted any evidence to show that any

8   such "policy or custom" was the moving force or cause in fact and proximate cause of plaintiff's

9   alleged deprivation in this case.  <u>See</u> <u>Brown</u>, 520 U.S. at 404.  The Supreme Court has

10  consistently reaffirmed that "Congress did not intend municipalities to be held liable unless

11  <u>deliberate</u> action attributable to the municipality directly caused a deprivation of federal rights."

12  As such, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but

13  nonetheless has caused an employee to do so, rigorous standards of culpability and causation

14  must be applied to ensure that the municipality is not held liable solely for the actions of its

15  employees." <u>Brown</u>, 520 U.S. at 405.

16          Here, plaintiff's counsel contends in general fashion that plaintiff can prove there

17  was a lack of discipline administered to correctional officers who had been using excessive force

18  and abusing inmates for many years.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 8.)  To be sure,

19  the Ninth Circuit has held that unconstitutional policies and customs can be inferred from

20  evidence of a municipal official's failure to investigate and failure to discipline or reprimand

21  offending employees.  <u>See</u> <u>Hunter</u>, 652 F.3d at 1233-34.  In this case, however, plaintiff has not

22  come forward with any evidence suggesting that the defendants acted in conscious disregard to a

23  risk that defendant Marten would improperly use the PepperBall System against plaintiff.  For

24  example, plaintiff has not submitted evidence that the defendants ignored any prior complaints

25  against defendant Marten for his improper use of the PepperBall System or even for engaging in

26  the excessive use of force in a broader sense  Nor has plaintiff submitted any evidence to show

how the defendants handled or failed to address complaints brought by any inmate against any

officer at BCJ for their improper use of the PepperBall System or for the use of excessive force in

a broader sense.  In this regard, even if improper use of the PepperBall System or excessive use

of force by deputies were problems at BCJ that were "so permanent and well settled as to

constitute a 'custom or usage' with the force of law,'" as plaintiff's counsel contends, the record

before this court on summary judgment is devoid of evidence that the defendants were

deliberately indifferent to any such problems or shortcomings.  Monell, 426 U.S. at 691; Brown,

520 U.S. at 407 ("A showing of simple or even heightened negligence will not suffice.").

Accordingly, defendants' motion for summary judgment with respect to plaintiff's

municipal liability claims should be granted, and the Sheriff's Department and defendant Jones

should be dismissed from this action.

V. Plaintiff's Breach of Contract Claim

"Only a party to a contract or an intended third-party beneficiary may sue to

enforce the terms of a contract or obtain an appropriate remedy for breach."  GECCMC 2005-C1

Plummer Street Office v. JPMorgan, 671 F.3d 1027, 1033 (9th Cir. 2012).  "A third party

qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the

terms of the contract make that intent evident."  Balsam v. Tcows, 627 F.3d 1158, 1161 (9th Cir.

2010) (quoting Karo v. San Diego Symphony Orchestra Ass'n, 762 F.2d 819, 821-22 (9th Cir.

1985)); Hook v. State of Ariz., Dep't of Corrs., 972 F.2d 1012, 1015 (9th Cir. 1992) ("In contract

law, third party beneficiaries of the government's rights under a contract are normally assumed to

be only incidental beneficiaries and are precluded from enforcing the contract absent a clear

expression of a different intent.").

The parties do not dispute that the contract between Butte County and CFMG for

the provision of medical care at BCJ provides as follows:

> The parties agree that they have not entered into this Agreement for
> the benefit of any third person or persons, and it is their express
> intention that the Agreement is intended to be for their respective

21

1          benefit only and not for the benefit of others who might otherwise
be deemed to constitute third-party beneficiaries hereof.

2

3  (Defs.' SUDF 29-30, Am. Flicker Decl. & Ex. B.)

4          In this case, the contract language at issue is unambiguous.  As a matter of law,

5  plaintiff is not an intended third-party beneficiary and may not seek enforcement of the contract

6  between Butte County and CFMG.  See Nelson v. Butte County Sheriff's Dep't, No. 2:09-cv-

7  2776 JAM EFB P, 2012 WL 812385 at *22 (E.D. Cal. Mar. 9, 2012) (Butte County Jail inmates

8  are not third-party beneficiaries to the County/CFMG contract and cannot seek enforcement of

9  it); see also Jones v. Aetna Casualty & Surety Co., 26 Cal. App. 4th 1717, 1724 (1994) ("A third

10  party should not be permitted to enforce covenants made not for his benefit, but rather for

11  others."); Neverkovec v. Fredericks, 74 Cal. App. 4th 337, 348-49 (1999) ("The contracting

12  parties must have intended to confer a benefit on the third party.")

13          Accordingly, defendants' motion for summary judgment on plaintiff's breach of

14  contract claim should be granted.

15  VI.  Plaintiff's Consent Decree Claim

16          "The parties to a consent decree expect and achieve a continuing basis of

17  jurisdiction to enforce the terms of the resolution of their case in the court entering the order."

18  Wyatt v. County of Butte, No. 2:06-CV-1003 GEB JFM, 2007 WL 3340947 at *6 (E.D. Cal.

19  Nov. 9, 2007).  If a party attacks a consent decree in a second court, the second court may "refuse

20  entirely to entertain the action if relief in a more appropriate forum - the rendering court - were

21  available."  Goulart v. United Airlines, No. C 94-1751 SC, 1994 WL 544476 at *3 (N.D. Cal.

22  Sept. 28, 1994) (quoting Treadaway v. Academy of Motion Picture Arts, 783 F.2d 1418, 1421

23  (9th Cir. 1986)).

24          In this case, the parties do not dispute that the consent decree upon which plaintiff

25  seeks relief states as follows:

26  /////

1
2
3
4

> The Enforcement of this DECREE may be sought by any party or by the Coordinator.  If sought by the Coordinator, it shall be by written recommendation to the Court.  If sought by the parties, it shall be duly noticed motion or Order To Show Cause.  In either event, enforcement issues will be heard and decided by the Superior Court, County of Butte.

5    The parties to the consent decree at issue stipulated to the extension of the agreement, including

6    the Butte County Superior Court's continuing jurisdiction over the matter, through June 30,

7    2013.  (Defs.' SUDF 31-33, Am. Flicker Decl. & Ex. C.)

8              In this case, the consent decree expressly states that the Butte County Superior

9    Court retains jurisdiction over the enforcement of the provisions of that decree entered in that

10   court.  Plaintiff has made no showing that the Butte County Superior Court is unwilling or

11   otherwise unable to provide him relief in terms of its enforcement.  As such, in the interest of

12   comity and the orderly administration of justice, this court should decline to exercise jurisdiction

13   over matters involving the enforcement of the terms of a consent decree entered in state court.

14            Accordingly, defendants' motion for summary judgment on plaintiff's consent

15   decree claim should be granted.

16                              **OTHER MATTERS**

17            Counsel for the county defendants has filed objections to some of the evidence

18   offered by plaintiff in support of his opposition to the pending motion for summary judgment.

19   Defense counsel is advised that the court's findings and recommendations herein are not based

20   on the evidence to which defendants object.  Accordingly, the court will overrule the objections

21   without prejudice to reasserting them at trial should plaintiff move to introduce any of the

22   objected-to evidence at that time.

23            Also pending before the court is plaintiff's motion to supplement his opposition to

24   the pending motion for summary judgment.  Therein, counsel for plaintiff seeks to attach as

25   exhibits to plaintiff's opposition letters from BCJ inmates allegedly describing present conditions

26   at the jail.  Plaintiff's counsel contends that the letters support plaintiff's Monell claim and his

23

contention that inmates at BCJ suffer from long-term County practices and policies that sanction abuse of inmates.  Defense counsel has opposed the motion.

Plaintiff's counsel has attached only one of the letters to which she refers in her motion to supplement, explaining that she was awaiting others in the mail.  Upon review of the one letter submitted, however, the court finds that it (as well as any similar supplement) would be irrelevant to the issues presented on summary judgment in this case.  In the unverified letter submitted by plaintiff's counsel, which is not regarding this case but rather is addressed to counsel and is asking for legal assistance, a BCJ inmate describes an altercation at the jail in which other inmates (not correctional officers) purportedly "jumped" him.  Contrary to the contention of plaintiff's counsel, this letter does not support plaintiff's <u>Monell</u> claim.  Specifically, the letter in question does not in any way support a showing that defendants have a "policy or custom" of allowing correctional officers to abuse the PepperBall System or to use excessive force in a broader sense against inmates at the BCJ.  Therefore, the court will deny plaintiff's motion to supplement.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1.  Defendants' objections (Doc. No. 64) are overruled without prejudice to reasserting them at trial should plaintiff move to introduce any of the objected-to evidence at that time; and

2.  Plaintiff's motion to supplement (Doc. No. 66) is denied.

IT IS HEREBY RECOMMENDED that the county defendants' motion for summary judgment (Doc. No. 42) be granted in part and denied in part as follows:

1.  Defendants' motion for summary judgment on plaintiff's excessive use force claim against defendant Marten be denied;

2.  Defendants' motion for summary judgment on plaintiff's state law claims for assault and battery, violation of the Bane Act, and intentional infliction of emotional distress

24

1  against defendant Marten be denied;

2          3.  Defendants' motion for summary judgment on plaintiff's deliberate

3  indifference claims be granted and plaintiff's deliberate indifference claims against the county

4  defendants be dismissed;

5          4.  Defendants' motion for summary judgment on plaintiff's Monell claims be

6  granted and defendants Butte County Sheriff's Department and Captain Jones be dismissed;

7          5.  Defendants' motion for summary judgment on plaintiff's breach of contract

8  claim be granted; and

9          6.  Defendants' motion for summary judgment on plaintiff's breach of the state

10  court consent decree claim be granted.

11          These findings and recommendations are submitted to the United States District

12  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven

13  days after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

16  failure to file objections within the specified time may waive the right to appeal the District

17  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18  DATED: March 13, 2013.

19

20          _____

21  DAD:9                    DALE A. DROZD
   park2257.57county         UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26