IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GRANT S. PARKISON, JR.,

    Plaintiff,   No. 2:09-cv-2257 MCE DAD P

    vs.

BUTTE COUNTY SHERIFF'S DEPT., et al.,   <u>ORDER AND</u>

    Defendants.   <u>FINDINGS AND RECOMMENDATIONS</u>

/

    Plaintiff is state prisoner and former Butte County Jail inmate proceeding through counsel with a civil rights action seeking relief under 42 U.S.C. § 1983. This matter is before the court on a motion for summary judgment brought on behalf of defendant California Forensic Medical Group pursuant to Rule 56 of the Federal Rules of Civil Procedure. Counsel for plaintiff has filed an opposition to the motion, and counsel for defendant has filed a reply. In addition, both parties have filed motions to strike and counsel for plaintiff has filed a motion to supplement plaintiff's opposition. Below the court addresses each of these pending motions.

    The court heard the oral arguments of counsel in this case on May 25, 2012, and took the matter under submission at that time. For the reasons stated herein and already on the record, the court issues the following orders and findings and recommendations.

/////

1

**BACKGROUND**

Plaintiff is proceeding on his original complaint against defendant California Forensic Medical Group (hereinafter "CFMG").[1] In relevant part, plaintiff alleges in his complaint as follows. On June 7, 2008, plaintiff was incarcerated at the Butte County Jail ("BCJ"). During a lock-down incident, he was face down on the floor when defendant Correctional Officer Marten shot him in the back of the head at point blank range with a gun loaded with pepper balls. (Compl. at 3.)

Prior to his arrest and incarceration at BCJ, plaintiff underwent two consecutive surgical procedures in 2006 to control epileptic seizures. At that time, doctors removed a portion of plaintiff's brain matter that contained a tumor. As a result of the surgery, plaintiff is half blind and suffers from severe short-term memory loss, which affects his ability to retain information and, thus, follow directions. According to the complaint, plaintiff needs semi-annual MRI's to monitor his post-surgical status, his anti-seizure medication Tegretol, and blood tests to monitor his intake and levels of Tegretol. Plaintiff alleges that he did not receive any such monitoring for the sixteen months he was incarcerated at BCJ. (Compl. at 3 & 6.)

Plaintiff claims that defendant CFMG violated his rights under the Eighth Amendment and the Bane Act because the defendant denied him necessary medical treatment. Plaintiff also claims that defendant CFMG engaged in medical malpractice and violated his rights pursuant to a contract between CFMG and Butte County that governs the provision of medical care to inmates at the County Jail. In terms of relief, plaintiff seeks an award of monetary damages. (Compl. at 4-10.)

/////

/////

---

[1] Plaintiff has also sued the Butte County Sheriff's Department, Correctional Officer Marten, and Captain Jones. These county defendants are represented by the Butte County Counsel. Counsel on behalf of the county defendants has also filed a motion for summary judgment, which the court will address in separate findings and recommendations.

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

1    must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
2    of the suit under the governing law, see <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
3    (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir.
4    1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
5    return a verdict for the nonmoving party, see <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433,
6    1436 (9th Cir. 1987).

7           In the endeavor to establish the existence of a factual dispute, the opposing party
8    need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
9    claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
10   versions of the truth at trial."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary
11   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
12   genuine need for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
13   committee's note on 1963 amendments).

14          In resolving the summary judgment motion, the court examines the pleadings,
15   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
16   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  <u>See</u> <u>Anderson</u>,
17   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
18   court must be drawn in favor of the opposing party.  See <u>Matsushita</u>, 475 U.S. at 587.
19   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
20   produce a factual predicate from which the inference may be drawn.  See <u>Richards v. Nielsen</u>
21   <u>Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir.
22   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
23   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
24   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
25   'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).
26   /////

**OTHER APPLICABLE LEGAL STANDARDS**

I. <u>Civil Rights Act Pursuant to 42 U.S.C. § 1983</u>

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of <u>respondeat superior</u> and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979); <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).

II. <u>The Fourteenth Amendment and Inadequate Medical Care</u>

"[T]he 'deliberate indifference' standard applies to claims that correction facility officials failed to address the medical needs of pretrial detainees." <u>Clouthier v. County of Contra Costa</u>, 591 F.3d 1232, 1242 (9th Cir. 2010). See also <u>Simmons v. Navajo County</u>, 609 F.3d 1011, 1017 (9th Cir. 2010) ("Although the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to

pretrial detainees, we apply the same standards in both cases.") (internal citations omitted).

Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835. Under the deliberate indifference standard, a person may be found liable for denying adequate medical care if he "knows of and disregards an excessive risk to inmate health and safety." Id. at 837. See also Estelle v. Gamble, 429 U.S. 97, 106 (1976); Lolli v. County of Orange, 351 F.3d 410, 418-19 (9th Cir. 2003); Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). A deliberate indifference claim predicated upon the failure to provide medical treatment has two elements:

> First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). See also McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991) (an Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need."), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

III.  State Law

    A.  The Bane Civil Rights Act

California's Bane Civil Rights Act provides:

> (a) If a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured . . . .

/////

>(b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured.

Cal. Civ. Code § 52.1(a) & (b).

There are four elements to a claim brought under the Bane Act:  (1) the defendant interfered with or attempted to interfere with plaintiff's constitutional or statutory right; (2) the plaintiff reasonably believed that if he exercised his constitutional right the defendant would commit violence against him, or the defendant injured plaintiff to prevent him from exercising his constitutional right; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm.  See Austin B. v. Escondido Union Sch. Dist., 149 Cal. App. 4th 860, 883 (2007) ("The word 'interferes' as used in the Bane Act means 'violates.'"); see also Stamps v. Superior Court, 136 Cal. App. 4th 1441, 1448 (2006) (the Bane Civil Rights Act is intended to supplement Ralph Civil Rights Act and to allow an individual to seek relief to prevent violence before it occurs).

### B.  Professional Negligence/Medical Malpractice

Under California law, a plaintiff may succeed on a medical malpractice claim by establishing:  (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Hanson v. Grode, 76 Cal. App. 4th 601, 606 (1999) (quoting Budd v. Nixen, 6 Cal. 3d 195, 200 (1971)).  "The standard of care in a medical malpractice case requires that medical service providers exercise that . . . degree of skill, knowledge and care ordinarily possessed and exercised by members of their

profession under similar circumstances." Barris v. County of Los Angeles, 20 Cal. 4th 101, 108 n.1 (1999). Except where the type of conduct required by the particular circumstances is within the common knowledge of laymen, the standard of care can only be proven by expert testimony. Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988). Thus, "[w]hen a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." Id. at 392-93.

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. <u>Defendant's Statement of Undisputed Facts and Evidence</u>

Defendant's statement of undisputed facts is supported by citations to declarations signed under penalty of perjury by Dr. Jeffrey Gould, Nurse Linda Wilms, and Marriage and Family Therapist Deborah Saeger as well as references to copies of plaintiff's medical records.

The evidence submitted by defendant CFMG on summary judgment establishes the following. On November 13, 2007, plaintiff complained that he was having problems sleeping at BCJ. On November 17, 2007, Dr. John Baker prescribed him Trazodone to help him sleep. Plaintiff refused to take the medication on six occasions in December of 2007. (Def.'s SUDF 1-3, Wilms Decl. & Saeger Decl.)

On December 13, 2007, plaintiff met with Marriage and Family Therapist Deborah Saeger and agreed to take the Trazodone as prescribed. However, plaintiff refused to take the medication on eleven occasions in January of 2008. Dr. Baker discontinued the Trazodone prescription on January 17, 2008, as a result of plaintiff's refusal to take the medication, which was within the appropriate standard of care. Plaintiff did not report suffering from any problems with sleep thereafter, nor was there a medical indication to re-issue the medication. (Def.'s SUDF 4-9, Wilms Decl. & Saeger Decl.)

/////

/////

II. <u>Defendant's Arguments</u>

Defendant CFMG argues that plaintiff received medical care in keeping with the applicable standard of care while at BCJ. Defense counsel contends that none of the medical care plaintiff received evidenced deliberate indifference on the part of the defendants to any serious medical need. Defense counsel also contends that plaintiff continued receiving his anti-seizure medication throughout his incarceration at BCJ and incurred no damage as a result of his professed concern about the recurrence of a previously-removed tumor. Finally, defense counsel contends that there is no evidence before the court to support for plaintiff's claim that he is entitled to damages for a breach of contract. In this regard, defense counsel contends that even if plaintiff was a proper third-party beneficiary of the contract in question, there was no medical negligence upon which plaintiff could base a claim for contractual damages. (Def.'s Mem. of P. & A. at 6-9.)

III. <u>Plaintiff's Opposition</u>

In opposition to defendant CFMG's motion, counsel for plaintiff argues that in moving for summary judgment defendant CFMG erroneously focuses on BCJ's administration and discontinuation of Trazodone since plaintiff's complaint is actually about medical staff ignoring the required follow-up care he needed for his seizure disorder. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 1-3, 5, 13)

As to defendant's argument regarding BCJ's administration and discontinuation of the Trazodone prescription, for the most part, plaintiff does not dispute the defendant's version of events. In fact, plaintiff 's counsel states in the opposition to the pending motion that plaintiff has "no quarrel" with Dr. Baker's decision to discontinue Trazodone based upon plaintiff's refusal to take that medication. Nor does plaintiff dispute the fact that he never reported any further sleep problems after Dr. Baker discontinued the Trazodone prescription. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 4, 7, 8)

/////

IV. <u>Defendant's Reply</u>

In reply, defense counsel argues that insofar as plaintiff suffers from any medical conditions, his own opinion as to what treatment he should have received at BCJ is insufficient to state a cognizable claim as a matter of law.  Defense counsel also argues that the mere fact that plaintiff may have wanted to receive different care or been referred for diagnostic tests does not create a triable issue of fact particularly in light of the declaration from a qualified expert submitted by defendants which opines that plaintiff received medical treatment meeting the accepted standard of care while at BCJ. (Def.'s Reply at 1-4.)

**ANALYSIS**

Before turning to the merits of the pending motion for summary judgment, the court observes that plaintiff's primary complaint in this action is that the defendant failed to provide treatment or provide follow-up care for his seizure disorder.  Specifically, plaintiff alleges that the defendant failed to provide him with:  semi-annual MRI's to monitor his post-surgical status; his anti-seizure medication Tegretol; and regular blood tests to monitor his intake and the therapeutic levels of Tegretol.  Strangely, in moving for summary judgment counsel for defendant CFMG does not address plaintiff's primary allegations of constitutionally inadequate medical care as alleged in his complaint.  For example, defendant CFMG does not address what treatment, if any, plaintiff needed or received in connection with his documented seizure disorder.  Nor does defendant CFMG address whether it had an opportunity to, or was legally required to, provide plaintiff with medical care beyond the administration and discontinuation of the sleep aid Trazodone.  Although defense counsel argues at one point that plaintiff continued to receive his anti-seizure medication at BCJ, this fact is undisputed.  What remains unaddressed by defendant CFMG  is why plaintiff's mother had to provide that medication at times as opposed the defendant providing it.

Defendant CFMG had an "affirmative duty" as the moving party under Rule 56 to demonstrate an "entitlement to judgment as a matter of law." <u>Martinez v. Stanford</u>, 323 F.3d

1178, 1182-83 (9th Cir. 2003).  This, defendant CFMG has failed to do with respect to plaintiff's primary claim as set forth in his complaint.

Turning now to the merits of the pending motion, insofar as plaintiff complains at all about the care he received in connection with the administration and discontinuation of the sleep aid Trazodone, the court finds that there are no genuine issues of material fact in dispute with respect to the medical care provided by defendant CFMG.  Specifically, neither party disputes that Dr. Baker prescribed Trazodone for plaintiff in response to his complaint about sleep problems.  Neither party disputes that Dr. Baker subsequently discontinued Trazodone because plaintiff refused to take that medication and that plaintiff never reported any further sleep problems thereafter.  Finally, neither party disputes that Dr. Baker's discontinuation of the medication was within the appropriate standard of medical care.  Accordingly, defendant CFMG is entitled to summary judgment on this aspect of plaintiff's inadequate medical care claim.

However, as explained above, plaintiff's primary complaint is about the defendant's failure to provide constitutionally adequate medical care in connection with his seizure disorder.  Since defendant CFMG has not adequately demonstrated an entitlement to judgment as a matter of law on this aspect of plaintiff's medical care claim, summary judgment should be denied and this claim should proceed to trial.

Ultimately, this case may prove to present a mere difference of opinion between plaintiff and the defendant as to the need to pursue one course of medical treatment over another and thus may not present a cognizable § 1983 claim.  See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).  On the other hand, plaintiff may be able to establish that this is instead a case where the defendant medical care provider deliberately ignored the express orders of plaintiff's prior treating physicians.  See, e.g., Jett, 439 F.3d at 1097-98 (prison doctor may have been deliberately indifferent to a prisoner's medical needs when he decided not to request an orthopedic consultation as the prisoner's emergency room doctor had previously ordered).  Based on the evidence presented by

defendant CFMG on summary judgment, the court simply cannot determine to what extent the defendant knew of and disregarded plaintiff's serious medical condition and needs.[2]  Therefore, summary judgment should be denied on this aspect of plaintiff's claim.

## OTHER MATTERS

Counsel for plaintiff has filed a motion to strike Dr. Jeffrey Gould's declaration filed in support of defendant CFMG's motion for summary judgment purportedly because it does not support defendant's statement of undisputed fact 10, which states "There was no medical indication for the use of any anti-seizure medication for Mr. Parkison during the time he was incarcerated at BCJ."  Plaintiff's counsel also contends that Dr. Gould's declaration is generally not probative.  In response to the motion, defense counsel withdraws statement of undisputed fact 10 as having been set forth in error but contends that Dr. Gould's declaration is probative.  Under these circumstances, the court will deny plaintiff's motion to strike as unnecessary.  If defendant CFMG seeks to introduce Dr. Gould's declaration or testimony at trial, plaintiff may renew any objections at that time.

Defendant CFMG has filed a motion to strike portions of Debbie Parkison's declaration filed in support of plaintiff's opposition to the pending motion for summary judgment.  Specifically, defense counsel contends that the declaration contains inadmissible hearsay and/or medical conclusions or opinions of the declarant without expert foundation.  Counsel for plaintiff has not opposed or otherwise responded to this motion to strike.  In any event, these findings and recommendations herein are not based on any such portion of Debbie Parkison's declaration.  Accordingly, the court will deny defendant's motion to strike as

---

[2] Both parties in this case assert Eighth Amendment arguments in support of their respective positions.  However, plaintiff was not a state prisoner for the vast majority of time he complains defendant CFMG failed to provide him with constitutionally adequate medical care.  Rather, plaintiff was awaiting trial and was therefore a pretrial detainee.  As noted above, as a pretrial detainee, plaintiff was entitled to protection under the Fourteenth Amendment Due Process Clause and not the Eighth Amendment Cruel and Unusual Punishment Clause, though the deliberate indifference standard governs claims brought under both amendments.  See Clouthier, 591 F.3d at 1242.

unnecessary.  If plaintiff seeks to introduce Debbie Parkison's declaration or testimony at trial, defendant may renew any objections at that time.

Finally, counsel for plaintiff has filed a motion to supplement plaintiff's opposition to the pending motion for summary judgment with a declaration from Dr. Albert Globus.  Counsel for defendant CFMG opposes the motion on the ground that plaintiff has never disclosed any retained expert in this case during discovery and has not shown good cause to modify the court's scheduling order with respect to such a disclosure.  Under these circumstances, the court will deny plaintiff's motion to supplement.  As an initial matter, according to the court's November 5, 2010, scheduling order, plaintiff was required to disclose any experts on or before September 30, 2011, and any supplemental experts on or before November 5, 2011.  To seek to introduce an expert witness at this late stage of the litigation, counsel would have needed to begin by filing a motion to modify the court's scheduling order.  See Johnson v. Mammoth Re-creations, 975 F.2d 604, 608 (9th Cir. 1992).  Here, counsel has failed to do so, and even if the court construed plaintiff's motion to supplement as a motion to modify the scheduling order, counsel has failed to show good cause for the modification of that order as required.  See Zivkovich v. Souther California Edison Co., 302 F.3d 1080 (9th Cir. 2002) ("If the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted.").

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to strike (Doc. No. 50) is denied as unnecessary.  If defendant CFMG seeks to introduce Dr. Gould's declaration or testimony at trial, plaintiff may renew any objections at that time;

2. Defendant's motion to strike (Doc. No. 58) is denied as unnecessary.  If plaintiff seeks to introduce Debbie Parkison's declaration or testimony at trial, defendant may renew any objections at that time; and

3. Plaintiff's motion to supplement (Doc. No. 62) is denied.

IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (Doc. No. 31) be granted to the extent plaintiff's complaint could be construed as presenting an inadequate medical care claim with respect to the administration and discontinuation of Trazodone during plaintiff's confinement at the BCJ; and

2. Defendant's motion for summary judgment (Doc. No. 31) be denied and the case proceed on plaintiff's claim that defendant CFMG failed to treat and provide follow-up care with respect to his seizure disorder in violation of the Fourteenth Amendment and state law.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 13, 2013.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
park2257.57cfmg

14